**O**

# United States District Court
# Central District of California

JOSE JAVIER PEREZ,

         Plaintiff,

   v.

TOYOTA MOTOR SALES, U.S.A., INC. et al.,

         Defendants.

Case № 2:22-cv-00780-ODW (AFMx)

**ORDER GRANTING MOTION TO DISMISS [104]**

## I.     INTRODUCTION

On October 12, 2021, Plaintiff Jose Javier Perez initiated this putative class action against Defendants Toyota Motor Sales, U.S.A., Inc. ("TMS"), Toyota Motor Corporation ("TMC"), and Southeast Toyota Distributors, LLC ("Southeast Toyota"). (Compl., ECF No. 1.)  Defendants now move to dismiss Perez's amended implied warranty claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Second Mot. Dismiss ("Mot." or "Motion"), ECF No. 104-1.)  The Motion is fully briefed.  (Opp'n, ECF No. 107; Reply, ECF No. 108.)  For the following reasons, the Court **GRANTS** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     BACKGROUND

TMS manufacturers, distributes, and sells Toyota vehicles in the United States. (Second Am. Compl. ("SAC") ¶ 30, ECF No. 102.)   TMC is the parent company of TMS (collectively, "Toyota").   (*Id.* ¶ 29.)   Southeast Toyota distributes Toyota vehicles, parts, and accessories to dealers in several states, including Florida.   (*Id.* ¶ 33.)  Perez alleges that Toyota enters into agreements with its nationwide network of authorized dealerships for the exclusive right to sell new Toyota vehicles to consumers.   (*Id.* ¶ 98.)   Perez also alleges that Toyota provides warranties directly to consumers who purchase new vehicles from authorized dealerships.   (*Id.*)

On August 5, 2019, Perez purchased a new 2020 Toyota Prius Prime ("Vehicle") from non-party Central Florida Toyota-Scion, an authorized Toyota dealer in Florida ("Dealership").   (*Id.* ¶ 17.)  Within a week of his purchase, Perez noticed a foul odor emanating from the Vehicle's air-conditioning vents.   (*Id.* ¶ 19.)   Perez alleges that this odor is caused by defects in the Vehicle's heating, ventilation, and air conditioning system ("HVAC").   (*Id.* ¶ 21.)   Perez further alleges that Defendants knew of the HVAC defects affecting the Vehicle, yet failed to disclose this information to Perez prior to his purchase, (*id.* ¶ 23), and that Toyota knew the Vehicle would be purchased by consumers from authorized dealerships, passing unchanged from dealers to consumers, (*id.* ¶ 133).

On January 3, 2022, Perez filed the First Amended Complaint, (First Am. Compl. ("FAC"), ECF No. 20), which Defendants moved to dismiss, (Mot. Dismiss ("Mot. Dismiss FAC"), ECF No. 51).   The Court denied Defendants' motion with respect to Perez's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim, but granted the motion to dismiss Perez's implied and express warranty claims, with leave to amend.   (Order Granting in Part and Den. in Part Mot. Dismiss FAC ("Order"), ECF No. 101.)  Perez then filed the Second Amended Complaint, in which he asserts two causes of action on behalf of himself and similarly situated members of a putative class: (1) violations of FDUTPA, Fla. Stat. §§ 501.212 *et seq.*; and

(2) breach of implied warranties, Fla. Stat. §§ 672.314, 680.212.[2]  Defendants now move to dismiss Perez's breach of implied warranties claim.

### III.    LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—"a short and plain statement of the claim." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003) (quoting Fed. R. Civ. P. 8(a)(2)). However, the factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  In making that determination, a court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (internal quotation marks omitted) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). However, a court is not required to blindly accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See*

---

[2] Following the Court's Order on Defendants' Motion to Dismiss the First Amended Complaint, Perez elected not to amend or pursue his claim for breach of express warranty.  (SAC n.1.)

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.   DISCUSSION

Defendants seek dismissal of Perez's implied warranty claim with prejudice. (Mot. 1–2.) Despite amending his allegations, Perez fails to cure the prior deficiencies identified by the Court. (*See* Order 7–9.)

"Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) (citing *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988)). "Consistent with the overwhelming weight of Florida law," courts have "repeatedly ruled that to establish contractual privity to state a breach of implied warranty claim, plaintiffs must purchase the product at issue directly from the defendant." *See Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019) (collecting cases). "Although a consumer who purchases a product from a dealer[] is in privity with the dealer, the consumer is not in privity with [the] manufacturer for purposes of enforcing an implied warranty of merchantability." *Varner v. Domestic Corp.*, No. 16-22482-CIV-Scola, 2017 WL 3730618, at *12 (S.D. Fla. Feb. 7, 2017).

Here, because Perez purchased the Vehicle from a non-party dealership, (*see* SAC ¶ 17), his purchase does not place him in privity with Defendants for purposes of enforcing an implied warranty under Florida law. Perez argues that he has established privity under third-party beneficiary and agency theories, and that Florida law recognizes these theories as exceptions to the privity requirement. (*See* Opp'n 2–8.)

## A.     Third-Party Beneficiary

Perez argues that a third-party beneficiary exception to Florida's privity requirement is well-established.  (*Id.* at 2.)  Yet, as with his opposition to Defendants' Motion to Dismiss the First Amended Complaint, Perez again offers no binding Florida-state authority to support the applicability of a third-party beneficiary theory to implied warranty claims in a manufacturer-dealership-consumer context.  (*See* Order 7–9; Opp'n 2–6.)  Although Perez identifies cases where Florida courts have acknowledged a third-party beneficiary exception, none of these cases constitute or cite to binding Florida-state authority finding that a third-party beneficiary exception applies in this context.  (*See* Opp'n 2–6.)

Even if Florida law supported applying a third-party beneficiary exception in the manufacturer-dealership-consumer context, "[c]ases are uniform that in order to sustain an action instigated by a party beneficiary, the plaintiff must plead the contract which was expressly for his benefit and one under which it clearly appears that he was a beneficiary."  *Weimar v. Yacht Club Point Ests., Inc.*, 223 So. 2d 100, 102 (Fla. Dist. Ct. App. 1969).   Like the First Amended Complaint, Perez's Second Amended Complaint contains no allegations of a contract between the dealership and manufacturer that expressly designates Perez and the putative class members as third-party beneficiaries.   (Order 8; *see generally* SAC.)   Rather than plead the existence of such a contract, Perez puts forward broad and conclusory allegations regarding the source of his alleged third-party benefits.  Perez alleges that Toyota enters into agreements with its network of authorized dealerships, granting these dealerships an exclusive right to sell new Toyota vehicles and permission to service and repair the vehicles under warranties Toyota provides to consumers.  (*See* SAC ¶¶ 98–99.)  Perez further alleges that consumers like himself are the "true intended beneficiaries of Toyota's implied warranties" to its dealers because dealers are not the ultimate consumers of Toyota vehicles.  (*See id.* ¶ 100.)  However, these allegations do not address any contracts made for the express benefit of Perez and the putative

class members. *See Varner*, 2017 WL 3730618, at *12 (finding allegations that plaintiffs were "the intended consumers of [a product] and are third-party beneficiaries" insufficient under Florida law).

As the Court previously stated, manufacturers may enter into contractual relationships with dealerships to sell vehicles before knowing who will purchase the vehicles. (*See* Order 8.)  As a result, "when the dealer and manufacturer establish[] their relationship and the implied warranty arising therefrom, neither kn[ow] exactly for whose benefit they might [be] establishing that implied warranty." *Glassburg v. Ford Motor Co.*, No. 2:21-cv-01333-ODW (MAAx), 2021 WL 5086358, at *6 (C.D. Cal. Nov. 2, 2021) (declining to hold purchaser of vehicle in privity with manufacturer under California third-party beneficiary theory).  Further, "in the vehicle sale context, it is the dealer who exerts primary control over which consumers purchase a vehicle; practically speaking, the manufacturer has no say in the matter." *Id.* at *7.  The Court declines to assume that Toyota intended to confer third-party benefits onto such a "nebulous, intractable" class of consumers entirely outside of Toyota's knowledge or control.  *Id.*

Adding further uncertainty to the source of these alleged third-party benefits is Southeast Toyota's alleged role as an independent distributor of Toyota vehicles.  (*See* SAC ¶ 33.)  Here, Perez alleges that Southeast Toyota distributes Toyota vehicles to dealerships in Southeast Toyota's network.  (*Id.*)  Thus, based on Perez's allegations, some contractual relationships between dealerships and Toyota are interrupted by Southeast Toyota's role as an independent distributor of Toyota vehicles.  Yet Perez entirely ignores Southeast Toyota's role in the manufacturer-dealership-consumer context, (*see id.* ¶¶ 98–102, 127–140), adding further uncertainty as to which contract between which parties expressly conferred these alleged third-party benefits on Perez and the putative class members.

Perez's conclusory allegations fail to demonstrate the existence of a contract that expressly designates Perez and the putative class members as third-party

beneficiaries. Thus, Perez's factual allegations as to his third-party beneficiary status are insufficient to raise his claim for relief above the speculative level as required to survive dismissal. *Twombly*, 550 U.S. at 557. The Court finds that Perez's implied warranty claim is not sufficiently pleaded under a third-party beneficiary theory.

**B.    Agency Relationship**

Alternatively, Perez argues that Florida law recognizes an agency exception to the privity requirement. (*See* Opp'n 7–8.) Again, Perez offers no binding authority to support the application of an agency theory to implied warranty claims in a manufacturer-dealership-consumer context. (*See id.*)

Even if the Court recognized an agency exception to the privity requirement under Florida law, to survive a motion to dismiss, Perez must allege facts sufficient to establish: "1) acknowledgement by [the manufacturer] that [the dealership] was acting as its agent; 2) acceptance of the undertaking by [the dealership]; and 3) control by [the manufacturer] over [the dealership's] day-to-day activities during the course of the agency." *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 326 (Fla. Dist. Ct. App. 2008) (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990)). Perez does not sufficiently allege any of these elements. Rather, Perez offers only conclusory allegations that dealerships act as Toyota's agents. (*See* SAC ¶¶ 98–102.) He fails to allege any facts as to which of the Defendants conferred actual or apparent authority on the dealerships, who exercises control over the day-to-day activities of these dealerships, how this control is exercised, or whether the Dealership that sold the Vehicle to Perez was specifically under the control of any Defendants. (*See id.*)

Absent sufficient facts, Perez cannot rely on a "principal-agent theory" as an "end-run around Florida's historic privity requirement." *Ocana*, 992 So. 2d at 326. The Court finds that Perez fails to sufficiently plead an agency exception to survive

1  dismissal of his implied warranty claim.  Because Perez fails to allege contractual

2  privity with Defendants or an applicable exception, his implied warranty claim fails.[3]

3  **C.    Leave to Amend**

4      Further, the Court concludes that leave to amend is not warranted.  "[W]hen a

5  district court has already granted a plaintiff leave to amend, its discretion in deciding

6  subsequent motions to amend is particularly broad."  *Chodos v. W. Publ'g Co.*,

7  292 F.3d 992, 1003 (9th Cir. 2002) (internal quotation marks omitted).  In granting

8  Perez leave to amend his First Amended Complaint, the Court addressed Perez's

9  failure to establish privity, including Perez's failure to allege any contract that

10 expressly designates Perez as a third-party beneficiary.  (Order 8.)  However, as

11 explained above, Perez fails to cure this deficiency in his Second Amended

12 Complaint.  Given Perez's previous opportunity to cure the deficiencies in his implied

13 warranty claim, his failure to plead sufficient facts in his Second Amended Complaint

14 indicates that further amendment would be futile.  *See Zucco Partners, LLC v.*

15 *Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (finding failure to cure pleading

16 deficiencies is "strong indication that the plaintiffs have no additional facts to plead").

### V.    CONCLUSION

18     For the reasons discussed above, the Court **GRANTS** Defendants' motion to

19 dismiss Perez's implied warranty claim with prejudice.  (ECF No. 104.)

21     **IT IS SO ORDERED.**

23     October 25, 2022

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

---

[3] Having found that Perez fails to establish contractual privity to support his implied warranty claim, the Court does not reach the issue of pre-suit notice.  (Mot. 11.)